# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

STEVEN JOHN STOLTENBERG,

        Defendant.

No. CR00-3021

**REPORT AND RECOMMENDATION**

_____

This matter comes before the court pursuant to movant Steven Stoltenberg's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (docket number 144).[1] This matter was referred to the undersigned United States Magistrate Judge for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (docket number 151). The undersigned recommends that the movant's motion be denied and this matter be dismissed.

## I. PROCEDURAL BACKGROUND

The movant, Steven Stoltenberg (Mr. Stoltenberg), was charged in a two-count indictment on June 14, 2000 (docket number 1). Count 1 charged Mr. Stoltenberg with conspiracy to distribute methamphetamine. Count 2 charged Mr. Stoltenberg with intent to distribute methamphetamine and cocaine. Mr. Stoltenberg was then named in an eight-count superseding indictment on November 17, 2000 (docket number 29). Mr. Stoltenberg was then charged in a nine-count second superseding indictment on May 17, 2001

---

[1] If a prisoner is in custody pursuant to a sentence imposed by a federal court and such prisoner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, [the prisoner] may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255. See also Daniels v. United States, 532 U.S. 374, 377 (2001).

(docket number 67).  Finally, Mr. Stoltenberg was named in a nine-count third superseding indictment on June 19, 2001 (docket number 83).  Count 1 charged Mr. Stoltenberg with possession with the intent to distribute 500 grams or more of methamphetamine and cocaine after being found guilty of a previous felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C) and 846.  Count 2 charged Mr. Stoltenberg with possession with intent to distribute 50 grams of methamphetamine and cocaine after having previously been found guilty of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 841 (b)(1)(C).  Count 3 charged Mr. Stoltenberg with money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(I) and 1957.  Counts 4 and 5 charged that Mr. Stoltenberg engaged in monetary transactions affecting interstate commerce in criminally derived property of a value greater than $10,000.00, in violation of 18 U.S.C. §§ 1957 and 2.  Counts 6 and 7 charged that Mr. Stoltenberg engaged in financial transactions which involved the proceeds of a specified unlawful activity, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§ 1956(a)(1)(B)(I) and 2.  Count 8 was a forfeiture count.  Count 9 charged Mr. Stoltenberg with distribution of methamphetamine to one or more persons under twenty-one years of age.

Mr. Stoltenberg filed a motion to suppress evidence on October 30, 2000 (docket number 19).[2]  In his motion to suppress, Mr. Stoltenberg argued for the suppression of evidence seized from his residence and business pursuant to four search warrants issued by an Iowa state magistrate.  An evidentiary hearing was held on November 27, 2000.[3]  Mr. Stoltenberg testified at the suppression hearing.  The court filed a report and

---

[2] Attorney Steven VandenBerg represented Mr. Stoltenberg through the May 29, 2001 detention hearing and continued his representation of Mr. Stoltenberg until June 18, 2001, when attorney Russell Schroeder Jr. filed a notice of appearance (docket number 81).

[3] The Hon. Paul A. Zoss, Magistrate Judge for the Northern District of Iowa.

recommendation on December 27, 2000, recommending that Mr. Stoltenberg's motion to suppress be granted (docket number 42). On January 16, 2001, the government filed objections to the court's December 27, 2000 report and recommendation and requested a hearing (docket number 49). An evidentiary hearing was held on February 5, 2001.[4] By order dated February 20, 2001, the court granted in part and denied in part Mr. Stoltenberg's motion to suppress evidence (docket number 55). Evidence that had been seized from a backpack was suppressed, but the evidence discovered pursuant to three of the search warrants was admitted. Mr. Stoltenberg filed a motion to reconsider on March 5, 2001 (docket number 57). By order dated April 16, 2001, the court denied Mr. Stoltenberg's motion to reconsider (docket number 62).

A detention hearing was held on May 29, 2005 (docket number 73).[5] The court granted the government's motion for revocation of pre-trial release at the May 29, 2005 hearing and entered an order of detention on June 6, 2001 (docket numbers 75 and 80).

Mr. Stoltenberg signed a cooperation plea agreement on December 12, 2001, in which he agreed to plead guilty to Count 1 (conspiracy to distribute 500 grams or more of methamphetamine and cocaine), Count 8 (forfeiture), and Count 9 (distribution of methamphetamine to persons under 21 years of age). Mr. Stoltenberg entered pleas of guilty to Counts 1, 8 and 9 pursuant to the plea agreement on December 12, 2001 (docket number 107).[6]

---

[4] The Hon. Mark W. Bennett, Chief District Court Judge for the Northern District of Iowa.

[5] The Hon. John A. Jarvey, Chief Magistrate Judge for the Northern District of Iowa.

[6] The Hon. Michael J. Melloy, formerly United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Eighth Circuit Court of Appeals.

Sentencing was held on March 1, 2002.[7] The court denied Mr. Stoltenberg's request for a decrease in his offense level based on acceptance of responsibility. The court enhanced Mr. Stoltenberg's offense level for obstruction of justice pursuant to USSG § 3C.1 for what the court found to be "egregious" conduct by Mr. Stoltenberg while on pretrial release, including Mr. Stoltenberg's conduct of money laundering and distributing drugs to high school age girls. Based on a total offense level of 38 and a criminal history category of 2, the court determined Mr. Stoltenberg's guideline sentencing range to be between 262 and 327 months. The court sentenced Mr. Stoltenberg to two concurrent terms of 300 months imprisonment. Mr. Stoltenberg was also sentenced to a term of supervised release of 10 years for Count 1 and 6 years for Count 9, to be served concurrently. Mr. Stoltenberg was further ordered to pay a $200.00 special assessment. Counts 2, 3, 4 and 5 of the third superseding indictment were dismissed at sentencing. The court entered judgment on March 1, 2002.

Mr. Stoltenberg appealed his sentence on March 11, 2002.[8] On appeal, Mr. Stoltenberg argued that the sentencing court clearly erred in denying his request for a reduction in offense level for acceptance of responsibility.[9] On October 9, 2002, the Eighth Circuit Court of Appeals affirmed the district court's application of the sentence enhancement.[10]

---

[7] The Hon. Michael J. Melloy, formerly United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Eighth Circuit Court of Appeals. Attorney Russell Schroeder represented Mr. Stoltenberg at sentencing.

[8] Russell Schroeder represented Mr. Stoltenberg during his appeal.

[9] See United States v. Stoltenberg, 309 F.3d 499 (8th Cir. 2002) (per curiam).

[10] United States v. Stoltenberg, 309 F.3d 499 (8th Cir. 2002) (holding that the district court correctly weighed Mr. Stoltenberg's obstructive conduct against his acceptant conduct and accordingly, the district court did not clearly err in denying Mr. Stoltenberg's request for an acceptance of responsibility reduction).

Mr. Stoltenberg filed the instant motion on September 25, 2003. In his 28 U.S.C. § 2255 motion, Mr. Stoltenberg raises several arguments challenging his sentence. In support of his motion to vacate, set aside, or correct sentence, Mr. Stoltenberg sets forth the following grounds:

> (Claim 1) both of Mr. Stoltenberg's counsel were ineffective at all stages.
>
> (Claim 2) [at sentencing, the district court erred in] assuming that the alleged substance was D-Meth.

As to Claim 1, Mr. Stoltenberg alleges the following deficiencies on the part of his counsel in support of the contention that he received ineffective assistance of counsel: 1) counsel of record failed to adequately explain the [p]rocedure of Rule 11; (2) counsel failed to object and argue the definition of distribution to a minor under the age of 21 as described by the statutory language; (3) counsel failed to object and argue the identity of methamphetamine versus amphetamine; (4) counsel failed to interview witnesses; (5) counsel (Steven VandenBerg) induced perjury that resulted in an obstruction of justice enhancement which increased Mr. Stoltenberg's sentence within the guideline range and this conduct by counsel so severely damaged Mr. Stoltenberg's rights under the Sixth Amendment that Mr. Stoltenberg was coerced into a guilty plea; (6) counsel failed to object and argue the prior conviction which increased Mr. Stoltenberg's minimum sentence whereas the prior conviction was twenty years old and was not a felony; (7) counsel (Russell Schroeder) because Mr. Schroeder pursued a guilty plea only to "protect a fellow attorney's integrity," and further abandoned Mr. Stoltenberg's appeal, which left him prejudiced.

On June 2, 2004, the court conducted an initial review of Mr. Stoltenberg's motion to vacate, set aside, or correct sentence and ordered the respondent to file an answer

(docket number 148).[11]  The respondent filed a resistance to Mr. Stoltenberg's motion to vacate, set aside, or correct sentence on July 28, 2004 (docket number 149). Mr. Stoltenberg filed a reply to the government's resistance on August 16, 2004 (docket number 150).

## II. CONCLUSIONS OF LAW

### A. Standard Under 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 states in pertinent part:

> A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Section 2255 is the statutory analogue of habeas corpus for persons in federal custody.  Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987). "Like habeas itself, Section 2255 is not the equivalent of a direct appeal.  There are many claims of error sufficiently grave and prejudicial to cause a reversal of conviction on direct appeal, but yet not fundamental enough to support a collateral attack" under § 2255.  Poor Thunder, supra, at 821.   Consequently, relief under § 2255 is reserved solely for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if [left] uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citing Poor Thunder, supra, at 821).

Ordinarily, the failure of a § 2255 movant to raise an issue on direct appeal acts to procedurally bar him from raising that issue for the first time in a motion pursuant to

---

[11]  The Hon. Linda R. Reade, United States District Court Judge for the Northern District of Iowa.

§ 2255.[12]  Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997).   More specifically, as a result of a § 2255 movant's failure to raise an issue on appeal, the circuit court "cannot review his claims on their merits unless [the movant] is able to demonstrate either [1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall v. Benson, 114 F.3d 754, 758 (8th Cir. 1997) (citing Cole v. Thompson, 501 U.S. 722, 750 (1991)).   The requirement of cause and prejudice means that a § 2255 movant "may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error." Apfel, supra, at 1076 (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).   The "fundamental miscarriage of justice" exception to procedural default is "only available to a [movant] who demonstrates 'that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"   McCall, supra, at 758.   The rule of procedural default recognizes that the significant interest of finality in criminal cases retains strength only if the direct appeal remains the exclusive route for complaining of errors that demonstrate neither "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." Id. at 821-22 (citing Johnson v. United States, 805 F.2d 1284, 1287 (7th Cir. 1986); (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Once a court has decided the merits of all of the movant's claims which are properly before it, and has further determined whether the remaining claims may be excused from procedural default based on cause and prejudice, the court may analyze whether the movant should alternatively be excused from procedural default under the fundamental

---

[12] The rule of procedural default applies with equal force to an adjudication of guilt based on a defendant's plea of guilty as it does to a court or jury conviction.  See Reid v. United States, 976 F.2d 446, 448 (8th Cir. 1992) (applying the rule of procedural default after the defendant's knowing and voluntary plea of guilty).

miscarriage of justice exception based on a claim of actual innocence. See <u>Dretke v.</u> <u>Haley</u>, 124 S. Ct. 1847 (2004). The actual innocence exception to procedural default "applies only when a [movant] shows by clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have found the petitioner guilty . . . [t]he exception only applies . . . to claims of factual innocence as opposed to legal innocence." <u>Anderson v. United States</u>, 25 F.3d 704, 706–07 (8th Cir. 1994). Specifically, a movant claiming actual innocence must show: (1) that his allegations of constitutional error are supported by new reliable evidence that was not presented at trial; and (2) that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1351 (8th Cir. 1997). The fundamental miscarriage of justice exception is to remain rare and only be applied in the extraordinary case, reserved solely for those who are "truly deserving." <u>Weeks</u>, <u>supra</u>, at 1351 (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321-22 (1995)). Accordingly, the actual innocence exception mandates "review of procedurally barred, abusive, or successive claims only in the narrowest type of case--when a fundamental miscarriage of justice would otherwise result." <u>Id.</u> (citing <u>Bowman v. Gammon</u>, 85 F.3d 1339, 1346 (8th Cir. 1996)).

## B. Standard Regarding Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." <u>Strickland v. Washington</u>, 466 U.S. 668, 684 (1984).

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

<u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993) (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 658 (1984)). A criminal defendant is also entitled to effective assistance of counsel on a first appeal as of right. <u>Rogers v. United States</u>, 1 F.3d 697, 700 (8th Cir. 1993); <u>Estes v. United States</u>, 883 F.2d 645, 648 (8th Cir. 1989).

Absent unusual circumstances, a § 2255 movant's demonstration of ineffective assistance of counsel satisfies the cause and prejudice standard of procedural default. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). However, in order to successfully demonstrate ineffective assistance of counsel within the context of § 2255, the movant faces a heavy burden. See Apfel, supra, at 1076. In the context of a motion under § 2255, a claim of ineffective assistance of counsel is to be analyzed under the two-part test set forth in Strickland v. Washington. Strickland v. Washington, 466 U.S. 668 (1984). The United States Supreme Court has reformulated the Strickland test for constitutionally ineffective assistance of counsel in Lockhart v. Fretwell, 506 U.S. 364 (1993), and the Eighth Circuit Court of Appeals has applied that test:

> Counsel is constitutionally ineffective under Fretwell when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (citing Lockhart, 506 U.S. at ___, 113 S. Ct. at 842-43). Review of trial counsel's performance is deferential and the presumption is that trial counsel was competent and effective. Strickland, supra, at 689; Smith v. Lockhart, 921 F.2d 154, 156 (8th Cir. 1990). Reasonable trial strategy cannot rise to the level of ineffective assistance of counsel. Id. (citing Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986)). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," Strickland, supra, at 690, even if those strategic decisions prove unwise. Wing v. Sargent, 940 F.2d 379, 381 (8th Cir. 1988), cert denied, 489 U.S. 1088 (1989). Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Strickland, supra, at 693.

If a § 2255 movant fails to demonstrate ineffective assistance of counsel as cause for the procedural default and prejudice attributable thereto, he may not obtain review of his defaulted claim. See Wainright v. Sykes, 433 U.S. 72 (1977). In the context of

ineffective assistance of counsel, "cause" for procedural default must ordinarily be demonstrated by showing that some objective factor external to the defense impeded counsel's efforts to comply with the applicable procedural rule or standard of conduct. <u>See</u> <u>Smith v. Lockhart</u>, 882 F.2d 331, 333 (8th Cir. 1989) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)). "When counsel's conduct has impeded the [movant's] effort to bring a claim," such ineffective assistance of counsel constitutes "cause" for purposes of avoiding procedural default. <u>See</u> <u>Id.</u>

In addition to establishing "cause," a § 2255 movant must "shoulder the burden of showing, not merely that errors at his trial created a possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982). Where conduct has not prejudiced the movant, the court need not address the reasonableness of that conduct. <u>Id.</u> at 691; <u>United States v. Williams</u>, 994 F.2d 1287, 1291 (8th Cir. 1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as the result of counsel's performance. <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993); <u>West v. United States</u>, 994 F.2d 510, 513 (8th Cir. 1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. <u>Id.</u> at 372; <u>West v. United States</u>, 994 F.2d 510, 513 (8th Cir. 1993) (quoting Fretwell). Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." <u>Strickland</u>, <u>supra</u>, at 694; <u>Williams</u>, 994 F.2d at 1291 (quoting <u>Strickland</u>).

## C. Mr. Stoltenberg's Arguments Under 28 U.S.C. § 2255

A review of the record indicates that Mr. Stoltenberg failed to present any of his ineffective assistance of counsel claims or his claim of court error set forth in his § 2255

motion to the Eighth Circuit Court of Appeals for exhaustion.[13]   Therefore, Mr. Stoltenberg must demonstrate cause for the procedural default and prejudice attributable thereto in order to now obtain review of his procedurally defaulted claims.[14] See Wainright v. Sykes, 433 U.S. 72 (1977).  Mr. Stoltenberg asserts that as to each of his § 2255 claims, the issues were not previously properly presented because his counsel, both Mr. Schroeder and Mr. VandenBerg, were ineffective.   The court analyzes Mr. Stoltenberg's claims in turn.

Mr. Stoltenberg contends that both of his counsel, Mr. VandenBerg, and Mr. Schroeder, rendered deficient performance that resulted in prejudice.   First, Mr. Stoltenberg argues that Mr. Schroeder failed to adequately explain the procedure of Rule 11 to him and that he did not understand the nature of the charges against him or the consequences of pleading guilty.  The government responds that Mr. Stoltenberg's claim in this regard should be rejected because Mr. Stoltenberg demonstrated his knowledge of Rule 11 as well as the charges against him in both his written plea agreement and during the court's plea colloquy prior to entering his plea of guilty.

The court finds that Mr. Stoltenberg's claim that counsel was ineffective for failing to adequately explain the procedure of Rule 11, the nature of the charges, or the consequences of pleading guilty, is without merit, as the record demonstrates both that he was adequately informed and  that Mr. Stoltenberg understood the charges and penalties. First, the revised, signed plea agreement illustrates Mr. Stoltenberg's knowledge as to the

---

[13] On appeal to the Eighth Circuit Court of Appeals, Mr. Stoltenberg argued that the district court clearly erred in denying the reduction in sentence for acceptance of responsibility.  Mr. Stoltenberg did not frame the issue as one of ineffective assistance of counsel but rather directly challenged the district court's sentence in regard to the acceptance of responsibility issue.

[14] The court notes that Mr. Stoltenberg does not claim that he should be excused from procedural default based on the actual innocence exception.  The court therefore analyzes the issue of procedural default based solely on a cause and prejudice inquiry.

charges, possible penalties, and other consequences of pleading guilty. Specifically, pages one and two of the plea agreement specified the counts that Mr. Stoltenberg was pleading guilty to as well as the charges set forth in each count and the penalties associated with each charge:

> The defendant will plead guilty to Count 1 (conspiracy to distribute 500 grams or more of methamphetamine . . . Count 8 (forfeiture count) . . . and Count 9 (distribution of controlled substances to persons under 21 years of age . . . The defendant understands that, because the defendant has previously been convicted of a felony drug offense, Count 1 of the [I]ndictment is punishable by . . . Count 8 of the Indictment requires that . . . Count 9 of the Indictment . . . is punishable by . . .

The paragraphs in the plea agreement concerning the charges and penalties were each initialed by Mr. Stoltenberg. Mr. Stoltenberg also initialed paragraphs on pages six and seven of the plea agreement which set forth Mr. Stoltenberg's agreement with the government concerning sentencing provisions:

> The parties agree that . . . the defendant is responsible for the distribution of more than 1.5 kilograms but less than 5 kilograms of methamphetamine, along with additional quantities of cocaine and marijuana . . . . The defendant also agrees and stipulates that he shall receive a one-level upward adjustment for distribution of controlled substances to underaged individuals . . . . The defendant also agrees and stipulates that he shall receive a two-level upward adjustment for obstruction of justice . . . [t]he defendant further agrees and stipulates that, because of his obstructive conduct, he is not eligible for a downward adjustment for acceptance of responsibility unless he can demonstrate to the [c]ourt . . . that this is an extraordinary case . . .

Further, Mr. Stoltenberg initialed paragraphs found on pages 13 and 14 of the plea agreement which set forth the stipulation of facts. In the stipulation of facts, Mr. Stoltenberg agreed that between sometime in 1999 and May, 2001, he voluntarily and wilfully entered into an agreement with others to distribute methamphetamine, cocaine, and marijuana, and that he distributed more than 1.5 kilograms but less than 5 kilograms of

methamphetamine.  Mr. Stoltenberg also initialed the paragraph that read, "[a]lso during the course of the conspiracy, [Mr. Stoltenberg] distributed controlled substances to three females, all then under the age of twenty one."  In regard to the paragraph concerning an obstruction of justice enhancement, Mr. Stoltenberg initialed the following information:

> During the course of the prosecution in this case, [Mr. Stoltenberg] engaged in obstruction conduct on repeated occasions.  While on pretrial release in this case, [Mr. Stoltenberg] distributed methamphetamine to at least three girls, all of them then under 21 years of age.  During a detention hearing on May 29, 2001, defendant testified and falsely denied his distributing methamphetamine to anyone in Rockwell, Iowa.

Moreover, Mr. Stoltenberg initialed several paragraphs which set forth the acknowledgment of Mr. Stoltenberg's understanding.  In these paragraphs, Mr. Stoltenberg acknowledged that he had read each of the provisions of the entire plea agreement with the assistance of counsel and understood each provision, that by pleading guilty he would be giving up his right to a jury trial and all rights that would attach thereto, that his attorney had represented him in a competent manner, that he was entering into the plea agreement and pleading guilty freely and voluntary and without threats, force, intimidation, or coercion of any kind, and that he understood the nature of each offense to which he was pleading guilty.

Further, the transcript of the plea hearing, held December 10, 2001, demonstrates Mr. Stoltenberg's knowledge of the charges, possible penalties, and other consequences of pleading guilty.  During the plea colloquy, Mr. Stoltenberg indicated that he had sufficient time to go over the plea agreement with his attorney.  The court explained to Mr. Stoltenberg at the beginning of the hearing:

> before I can accept your guilty plea, I have to make certain you understand the charges against you, the rights you give up, and the possible penalties that can result from your guilty plea. I also have to make certain that you understand--that there's a factual basis for your plea.

Mr. Stoltenberg acknowledged that he had the opportunity to discuss his options of trial versus a plea with Mr. Schroeder.

The court recessed to allow Mr. Stoltenberg, counsel Schroeder, and the government to discuss the forfeiture aspect of the plea, which was the subject of a misunderstanding between the parties. Prior to adjourning for that recess, the court asked Mr. Stoltenberg, "[l]et me ask you this, Mr. Stoltenberg, before we do this [recess] though, is there anything else that you don't understand about this other than the forfeiture part of it?" Mr. Stoltenberg's reply was "no." The court reconvened sentencing on December 12, 2001. At that hearing, the parties submitted the revised plea agreement. Mr. Stoltenberg again entered pleas of guilty to Count 1, Count 8, and Count 9. He again indicated that he understood that he had the right to go to trial, that he had sufficient time to review the indictment, the facts of his case, and any possible defenses he may have, that he had sufficient time to go over the plea agreement with Mr. Schroeder, and that he was satisfied with the services and representation provided by Mr. Schroeder and had no complaints about his representation. Mr. Stoltenberg admitted to his knowing and willing involvement in the conspiracy to distribute methamphetamine, that at least 500 grams of methamphetamine were involved in the distribution, that he had previously been convicted of a felony drug offense, and that he intentionally transferred methamphetamine to an individual under the age of twenty-one. Mr. Stoltenberg acknowledged that he had read the stipulation of facts, affirmed to the court that each paragraph contained in the stipulation of facts was true and correct, and further provided additional information concerning his distribution of methamphetamine and in particular his distribution of methamphetamine to three minors and others while on pre-trial release. Mr. Stoltenberg also affirmed his prior admission that there was at least 1.5 kilograms of methamphetamine involved in the conspiracy. The court discussed the possible penalties for each count and the applicable mandatory minimum sentence. Mr. Stoltenberg acknowledged that he understood that other than a possible downward departure for substantial assistance, he

would not seek a downward adjustment and the government would not seek an upward departure pursuant to the plea agreement. The court went on to inquire:

> So, basically, there will be no departures, unless the government makes a motion based upon your cooperation, do you understand that?

> Answer ( [Mr.] Stoltenberg): Yes, Your Honor.

Based on this record, the court finds that there was no deficient performance on the part of Mr. Schroeder and consequently, Mr. Schroeder had no duty to raise this issue at sentencing or on appeal. Mr. Stoltenberg clearly acknowledged his understanding of the nature of the charges against him as well as the possible penalties and consequences related to pleading guilty to those charges, both in his plea agreement as well as during the court's inquiry.

Second, Mr. Stoltenberg contends that Mr. Schroeder was ineffective for failing to object and argue the definition of distribution to a minor under the age of 21. Specifically, Mr. Stoltenberg contends that "upon review of the plea in this instant matter the record reveals that the court failed to adequately inform [Mr. Stoltenberg] of the essential elements of the charged offense regarding distribution to a minor, nor does the record of the plea reflect a adequate basis for a plea of guilty where [Mr. Stoltenberg] never admitted to the essential elements of the charged offense." The court finds that Mr. Stoltenberg's contention is without merit. The plea transcript includes the following exchange between the court and Mr. Stoltenberg:

> The court: Count 9 charges distribution of a controlled substance to a person under the age of twenty-one. In order to be convicted of that offense, the Government would have to be required to proved beyond a reasonable doubt that on or about the date alleged in the indictment, which is between about May of 2000 and January of 2001, you intentionally transferred to another methamphetamine; second, at the time of the transfer, you knew it was methamphetamine; and third, that the distribution of the methamphetamine was to an individual

under the age of twenty-one.  Do you have any question about
that offense?

[Mr. Stoltenberg]: No, Your Honor.

The court: And do you also understand that you're pleading
guilty to the--well, let me ask you this.  Did you, in fact,
commit that offense?

[Mr. Stoltenberg]: Yes, Your Honor.

Later in the plea hearing, Mr. Stoltenberg provided a factual basis for pleading guilty to

Count 9, as follows:

The Court: And as I understand it, what you--what you did is
continued to deal drugs while you were on pretrial release, and
including the--giving drugs to these three minors that are
referred to in the stipulation [of facts], is that right?

[Mr. Stoltenberg]: Yes, Your Honor.

The Court: And in addition to sharing--well, let me--let me go
back and start.  Do I understand that as to these three minors
that you gave drugs to, was that basically for recreational use
as opposed to selling to these girls, or how did it work?

[Mr. Stoltenberg]: Recreational use, Your Honor.

. . . .

The court finds that based on this record, Mr. Stoltenberg clearly understood the elements

of the offense of  distribution to a minor, and further provided a factual basis for his plea

of guilty to that offense both in the plea agreement and during the plea hearing.  Therefore,

Mr. Schroeder had no duty to object to the definition of the offense either at the time of

sentencing or on appeal.

Third, Mr. Stoltenberg contends that his counsel was ineffective for failing to object to and argue the identity of methamphetamine versus amphetamine.[15] Specifically, Mr. Stoltenberg argues:

> at no time did the court nor counsel inform him that there were different types of Methamphetamine, which do not fall under the statutory provisions in which the government sought to seek punishment . . . . if counsel had been functioning as required by the [S]ixth [A]mendment [Mr. Stoltenberg] would have contested that the alleged substance was not meth but amphetamine or L-meth, which for sentencing purposes carries a much lesser sentence.

The government argues that Mr. Stoltenberg's argument in this regard is "completely moot," because he was "sentenced on two counts each carrying a sentence of 300 months . . . [c]ount nine dealt with his distribution to minors and did not list his previous conviction," and accordingly, "regardless of [Mr. Stoltenberg's] guideline range on Count 1 (in which he would still guideline out) his sentence would still stand on Count 9." The government further argues that "even if [Mr. Stoltenberg's] trial counsel had asserted the amphetamine guidelines should govern the sentencing, [Mr. Stoltenberg] cannot show that such an argument would have been successful," because Mr. Stoltenberg pleaded guilty to conspiracy to distribute methamphetamine, not amphetamine.[16]

The court finds that Mr. Stoltenberg's claim that Mr. Schroeder was ineffective for failing to argue that Mr. Stoltenberg conspired to distribute amphetamine and not methamphetamine is without merit. First, the record clearly demonstrates, as previously discussed, that Mr. Stoltenberg entered a knowing and voluntary plea to Count 1, which

---

[15] Mr. Stoltenberg additionally sets forth this argument as one of court error. Specifically, Mr. Stoltenberg asserts that the sentencing court erred in assuming that the substance in question was not "D-meth" or pure methamphetamine but rather was actually amphetamine.

[16] In support of its argument, the government cites to United States v. Hyatt, 207 F.3d 1036, 1038 (8th Cir. 2000) and United States v. Lopez, F.3d 597 (8th Cir. 1997).

charged him with conspiracy to distribute methamphetamine, not amphetamine. Mr. Stoltenberg does not allege any facts from which the court can reasonably infer that amphetamine was involved in this offense. Marijuana carries even lower penalties than amphetamine, but it could not be said that Mr. Stoltenberg's attorney was ineffective for not claiming that the drugs were marijuana rather than methamphetamine, either.

Fourth, Mr. Stoltenberg contends that Mr. Schroeder was ineffective for failing to interview several witnesses. Specifically, Mr. Stoltenberg contends that he was "prejudiced by counsel['s] failure to interview witnesses, whom [Mr. Stoltenberg] provided to counsel as these witnesses would have provided information that if properly assessed and utilized by counsel, could have prevented [Mr. Stoltenberg] from entering into a plea, and waiving valuable constitutional rights." Mr. Stoltenberg asserts that Mr. Schroeder should have interviewed (1) Jerry Avise, "who would have testified at trial and at the sentencing that [Mr. Stoltenberg] never gave drugs to minors," and whose testimony "potentially would have corroborated [Mr. Stoltenberg's] denial, and precluded [Mr. Stoltenberg] from entering into a guilty plea"; and (2) Mr. Stoltenberg's "family and friends," including Mr. Stoltenberg's brother.[17] Mr. Stoltenberg also argues that his counsel falsely represented to him that "the government['s] case was unbeatable based upon [Mr. Stoltenberg's] brother testifying for the government."[18] The government argues that Mr. Stoltenberg's counsel "zealously represented" Mr. Stoltenberg throughout

---

[17] Mr. Stoltenberg further claims that his plea of guilty was entered into involuntary because he was under duress stemming from his being notified that his brother may testify for the government. The court finds that based upon the plea hearing record, described in part above and in which Mr. Stoltenberg was repeatedly asked about the voluntariness of his plea, Mr. Stoltenberg's claim is without merit.

[18] Mr. Stoltenberg asserts that his counsel told him that the government intended to have Mr. Stoltenberg's brother testify against Mr. Stoltenberg, and produced a statement prepared by the government. Mr. Stoltenberg further asserts that he urged his counsel to interview his brother to "ascertain the validity of the investigative report prepared by the government," and that his counsel failed to do so.

his numerous proceedings and that it was "certainly reasonable for counsel to pursue a plea, rather than interviewing the friends and relatives [that Mr. Stoltenberg] listed, some of . . . who were facing charges of their own."

The court finds that Mr. Stoltenberg's claim that counsel was ineffective for failing to interview witnesses and for failing to interview Mr. Stoltenberg's brother or further inquire into his potential testimony is without merit. First, the court finds that Mr. Stoltenberg's counsel was not ineffective for failing to interview the family and friends identified by Mr. Stoltenberg. As previously discussed, Mr. Stoltenberg entered a knowing and voluntary plea to distributing drugs to three minors, and provided factual information to the court both in his plea agreement as well as by way of his own testimony in support of that plea. Friends who are willing to testify that they have never seen a defendant sell drugs do not generally make for an impressive defense, and it is most certainly within counsel's discretion to determine which witnesses, under the circumstances, should or should not be interviewed as potential witnesses. Mr. Stoltenberg cannot demonstrate prejudice arising from Mr. Schroeder's decision not to interview the witnesses recommended by Mr. Stoltenberg.

Second, Mr. Schroeder was not ineffective for failing to interview Mr. Stoltenberg's brother concerning his potential testimony on behalf of the government. The record clearly indicates that Mr. Schroeder discussed this potential testimony with the court at the sentencing hearing, in relevant part, as follows:

> . . . that plea was triggered by last minute evidence provided by the Government . . . . [Including that] there were informants that were going to testify . . . [o]ne witness was not of great concern to us. It was simply another informant. The other witness that we received notice of . . . was, in fact, [Mr. Stoltenberg's] own brother, Tom Stoltenberg. And Mr. Stoltenberg and I found his testimony to be devastating as far as if it would be presented in front of a jury. Until that time, Mr. Stoltenberg and I thought that we had available a defense that we could very well place before a jury, and that really changed our mind.

The court finds that it was appropriately within Mr. Schroeder's discretion and constituted reasonable trial strategy to choose not to interview Mr. Stoltenberg's brother and rather to assume that the government's characterization of his potential testimony was true and accurate. The court further finds that Mr. Stoltenberg has failed to establish prejudice arising from his counsel's failure to interview Mr. Stoltenberg's brother.[19] The government characterized Mr. Stoltenberg's brother's testimony as "add[ing] really nothing [to] the [g]overnment's case, other than what [the government] already had, even assuming [the government was] going to have him testify." Mr. Stoltenberg has pointed to no evidence to indicate that the government's characterization of his brother's potential testimony was erroneous or misleading, and accordingly, the court finds that Mr. Schroeder was not ineffective for refraining from interviewing Mr. Stoltenberg's brother to further inquire into the accuracy of the government's depiction of his potential testimony.

Fifth, Mr. Stoltenberg argues that his initial counsel, Mr. VandenBerg, was ineffective because he induced Mr. Stoltenberg into committing perjury which had the effect of coercing Mr. Stoltenberg into a guilty plea and further caused Mr. Stoltenberg to receive an obstruction of justice sentencing enhancement. Additionally, Mr. Stoltenberg argues that his trial counsel, Mr. Schroeder, was ineffective for failing to bring the actions of Mr. VandenBerg to the attention of the sentencing court. The government argues that Mr. Stoltenberg's claim of ineffective assistance of counsel in this regard must fail because (1) the sentencing court made clear that it was not imposing the obstruction of justice enhancement based solely upon Mr. Stoltenberg's perjured testimony but rather listed several reasons in support of the enhancement; (2) the sentencing court indicated that the denial of Mr. Stoltenberg's request for an acceptance of responsibility reduction was not

---

[19] The sentencing court specifically noted that The lateness of The defendant's plea was not "a big factor" in the court's decision to deny Mr. Stoltenberg's request for an acceptance of responsibility reduction in sentence.

based on Mr. Stoltenberg's perjured testimony but rather a result of Mr. Stoltenberg's continued criminal conduct while on pretrial release; and (3) contrary to Mr. Stoltenberg's assertion, Mr. Schroeder did discuss Mr. VandenBerg's alleged actions related to Mr. Stoltenberg's perjury.

The court finds first that Mr. Stoltenberg's argument that the advice of Mr. VandenBerg at the detention hearing had the effect of coercing him into pleading guilty is without merit. The issues presented at the detention hearing had nothing to do with the decision to plead guilty. As discussed in detail above, the court carefully inquired as to whether Mr. Stoltenberg, at the time that he entered his plea of guilty, was doing so voluntarily and without having been coerced. Mr. Stoltenberg gave no indication, during either the plea or sentencing hearings, that his plea of guilty was coerced by the fact that he feared he would be punished for having committed perjury which was in part the result of Mr. VandenBerg's advice. Because the court finds that there is no evidence that Mr. Stoltenberg was coerced into his plea of guilty, the court finds that Mr. Schroeder had no duty to raise such an argument at sentencing or on appeal.

The court further finds that Mr. Stoltenberg's claim that Mr. VandenBerg was ineffective for inducing him to perjure himself at the detention hearing is without merit. Specifically, the court finds that while the advice of Mr. VandenBerg that in part resulted in Mr. Stoltenberg giving perjured testimony clearly falls below the standard of reasonable representation, Mr. Stoltenberg cannot demonstrate prejudice resulting from Mr. VandenBerg's actions. Specifically, in determining that Mr. Stoltenberg should receive a sentence enhancement for obstruction of justice, the court stated in relevant part:

> Mr. Stoltenberg's conduct while on pretrial release was about as egregious as I've seen in a long, long time. Not only the money laundering, but as I say, the drug distribution; the partying with young girls - - high school girls is about as serious as I've seen in my years on the bench and - - and certainly warrants a sentence that's above the bottom of the guideline range in this case.

21

Further, in determining that Mr. Stoltenberg's case was not an exceptional case in which both an obstruction of justice sentencing enhancement and an acceptance of responsibility reduction may be appropriate, the court stated in relevant part:

> I think there is a combination of factors in this case, however, that do not make this an exceptional case and, in fact, make it a very poor case for Mr. Stoltenberg receiving acceptance of responsibility. First of all, the timing of the plea isn't a big factor in my decision . . . . And even the perjury at the - - at the detention hearing, that's much more troubling, but giving Mr. Stoltenberg the benefit of the doubt even on that and his prior attorney - - and I might mention I think his prior attorney has a lot of things to answer for in this case . . . [b]ut that's certainly a factor that I need to consider, but - - but most importantly, and I think the overriding factor that - - leads me to the conclusion that Mr. Stoltenberg is not entitled to acceptance is his continuing criminal conduct . . . . He was clearly advised that as a condition of his pretrial release that he was not to violate . . . [the] law, and he continued to engage . . . in . . . criminal conduct right up until the day he was rearrested and his pretrial release was revoked. And it involved not only the distribution of controlled substances and the money laundering . . . but also this distribution to minors is extremely troubling . . .
>
> . . .
>
> So for those reasons; principally the obstructive conduct by committing perjury at the detention hearing, but more importantly the continuing criminal conduct that didn't stop until he was arrested and pretrial release was revoked and probably wouldn't have stopped had he not been revoked, I don't think Mr. Stoltenberg is entitled to acceptance of responsibility.

Based upon this record, the court finds that although the sentencing court considered Mr. Stoltenberg's perjury at the detention hearing in determining whether to award a reduction in sentence based on acceptance of responsibility, the court's refusal to do so was in large part made based upon the court's finding that Mr. Stoltenberg continued to engage

in criminal conduct while on pretrial release, including money laundering as well as distributing drugs to minors. Accordingly, the court finds that Mr. Stoltenberg cannot establish prejudice arising from Mr. VandenBerg's advice concerning Mr. Stoltenberg's testimony at the detention hearing.

The court finds that Mr. Stoltenberg's claim that Mr. Schroeder was ineffective for failing to notify the sentencing court of Mr. VandenBerg's advice and actions concerning Mr. Stoltenberg's perjury is also without merit. The record clearly indicates that Mr. Schroeder brought those circumstances to the attention of the sentencing court:

> I believe I just need to make one more point, Judge. When this thing first started, this thing about perjured testimony at the pretrial or detention hearing, as much as I hate to say something about a colleague, a fellow lawyer, I think I need to say that Mr. Stoltenberg's position is that he was told [by Mr. VandenBerg] that he had to take the stand and he was convinced what he had to say and - - and he did and I have nothing else.

The court finds that Mr. Stoltenberg's counsel was not ineffective for failing to raise the issue because the record clearly demonstrates that the issue was in fact raised by Mr. Schroeder to the sentencing court, and further because, as discussed above, Mr. Stoltenberg has failed to establish prejudice.

Sixth, Mr. Stoltenberg argues that Mr. Schroeder was ineffective for failing to object to and argue that his prior conviction for delivery of a controlled substance (marijuana), which increased Mr. Stoltenberg's minimum sentence, was twenty years old, was not a felony, and therefore should not have been utilized in determining Mr. Stoltenberg's criminal history points.

The court finds that Mr. Stoltenberg's claim of ineffective assistance of counsel in this regard is without merit. A review of the Pre-Sentence Report, which was adopted by the sentencing court for purposes of imposing Mr. Stoltenberg's sentence, indicates that although the conviction in question is listed under the title "Adult Criminal Convictions," it was not assigned any points and was therefore not used to determine Mr. Stoltenberg's

total criminal history points.  Accordingly, Mr. Schroeder would have no duty to raise this issue to the sentencing court or on appeal.

Finally, Mr. Stoltenberg argues that Mr. Schroeder was generally ineffective because he pursued a guilty plea in order to protect Mr. VandenBerg's integrity and further "abandoned" Mr. Stoltenberg's appeal, leaving Mr. Stoltenberg prejudiced. Mr. Stoltenberg has pointed to no evidence of record in support of either claim.  The court finds that based upon the evidence facing Mr. Stoltenberg, it was entirely reasonable for Mr. Schroeder and Mr. Stoltenberg to pursue a plea agreement and avoid trial.  There is no evidence to substantiate Mr. Stoltenberg's claim that Mr. Schroeder's strategy in this regard was motivated in part or in whole by a desire to "protect the integrity" of Mr. VandenBerg just because both men are attorneys.  Further, there is nothing in the record which would indicate that Mr. Schroeder "abandoned" Mr. Stoltenberg's appeal. Mr. Schroeder pursued an appeal on behalf of Mr. Stoltenberg and argued that the sentencing court clearly erred in denying Mr. Stoltenberg's request for a reduction in sentence based on acceptance of responsibility.[20]  As discussed in detail above, Mr. Schroeder had no duty to raise other of the issues that Mr. Stoltenberg now claims should have been raised on appeal.  Accordingly, the court finds no evidence that Mr. Schroeder's representation of Mr. Stoltenberg at the appellate level was ineffective or in any way prejudiced Mr. Stoltenberg.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[21] to the Report and Recommendation within ten (10) days of the date of the

---

[20] United States v. Stoltenberg, 309 F.3d 499 (8th Cir. 2002).

[21] Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date.  A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.

report and recommendation, that Mr. Stoltenberg's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be denied.

June 28, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT